CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
2/6/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ALEXANDER SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25-cv-00349 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SHERIFF MICHAEL S. MONDUL, | ) | By:  Hon. Thomas T. Cullen |
| | ) |       United States District Judge |
| Defendant. | ) | |

Plaintiff Alexander Sims claims that, while he was in custody at the Danville, Virginia jail, he was subjected to "physical assault, chemical spray, prolonged restraint, and denial of medical care . . . ." (Am. Compl. ¶ IV.1–2 [ECF No. 19].) Pursuant to the Virginia Freedom of Information Act, Sims requested surveillance- and body-camera footage from his time in custody (approx. 16 hours). But he contends that Defendant Michael S. Mondul, Sheriff of the City of Danville, destroyed some of the video footage and selectively edited the rest. He has now sued Sheriff Mondul in both his official and individual capacities. For myriad reasons, Sims's complaint must be dismissed.

### I.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

The facts are taken from Sims's amended complaint and, for the limited purpose of ruling on the present motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On June 11, 2023, Sims was arrested at Caesar's Casino in Danville, Virginia, and charged with public intoxication and resisting arrest without force.[1] Thereafter, he was booked

---

[1] Sims does not make these allegations in this case specifically, but the court takes judicial notice of his numerous other lawsuits arising from that same evening. *See, e.g.*, *Sims v. Caesars Virginia, LLC, et al.*, No. 4:25-cv-00026

into the Danville City Jail, which is operated by the Danville Sheriff's Office. Defendant Michael S. Mondul is Sheriff of the City of Danville. (Am. Compl. ¶ III.4 [ECF No. 19].)

While in custody, Sims contends that he was "subjected to physical assault, chemical spray, prolonged restraint, and denial of medical care . . . ." (*Id.* ¶ IV.1–2.) He avers that he made "verbal complaints to two female staff in the Sheriff's office at the courthouse after being released." (*Id.* ¶ IV.3.) As a result of that complaint, Sims asserts that "video footage from inside the Danville Sheriff's Jail on June 11–12, 2023, the dates of the incident being downloaded and preserved and not destroyed as per usual policy/procedure." (*Id.* ¶ IV.4.) Despite all the footage being retained, however, Sims claims that "[t]he footage provided to the plaintiff has been severely and selectively edited down from the 16 hours requested to just 34 minutes and 15 seconds total." (*Id.* ¶ IV.6.) Sims filed a Virginia Freedom of Information Act ("FOIA") request in February in 2025, nearly two years[2] after the alleged incident, which resulted in him receiving the footage in question. (*Id.* ¶ IV.17–18.)

The rest of Sims's allegations are hard to parse, but he seems to suggest that Sheriff Mondul—either through jail policy or inaction and/or mismanagement—edited or deleted or allowed others to edit or delete footage. He refers to Mondul's "inaction" as "exacerbate[ing] this situation and suggest[ing] an intentional disregard for preventing evidence destructions at

---

(W.D. Va. May 20, 2025) (against the casino and casino employees); *Sims v. Shively, et al.*, No. 4:25-cv-00027 (W.D. Va. May 20, 2025) (against the arresting officers); *Sims v. Berger, et al.*, No. 7:25-cv-00347 (W.D. Va. May 20, 2025) (against jail personnel); *Sims v. Skrocki, et al.*, No. 7:25-cv-00348 (W.D. Va. May 20, 2025) (against additional jail and medical personnel). The court also takes notice of the applicable state-court records, which indicate that, on June 11, 2023, Sims was charged with public intoxication (*see* Va. Code Ann. § 18.2-388) and obstructing justice or resisting arrest without force (*see id.* § 18.2-460). Those charges were dismissed.

[2] Without explanation, Sims states that he was delayed in "pursuing this matter . . . due to circumstances outside of his control." (Am. Compl. ¶ IV.9.)

the Danville Sheriff's Office." (*Id.* ¶ IV.10.) This "inaction," he says, "points to supervisory indifference or tacit authorization of the subordinate's misconduct. Additionally, it establishes that defendant Mondul, as a supervisor, possessed actual or constructive knowledge of the subordinate's selective video editing, which constitutes a violation of 18 U.S.C. § 1519." (*Id.*)

Sims alleges that the footage he did receive shows him being "threatened with a taser, restrained, and refused medical attention" and a "visible assault," but "abruptly ends" after the assault "and excludes critical evidence of [his] prolonged confinement in a restraint chair against established policy on the night of June 11, 2023, and into June 12, 2023, at 7:25am." (*Id.* ¶ IV.12–13.) He alleges that Mondul "authorized or allowed the editing or deletion of this footage to conceal the severity of the constitutional violations and impede Plaintiff's ability to obtain redress." (*Id.* ¶ IV.14.) Sims further alleges that Mondul referenced the jail's video-retention policies in an email to him on March 10, 2025, and that Mondul was "aware of subordinates' civil rights violations against detainees and the deletion of video footage to impede legal action." (*Id.* ¶ IV.16.)

As it relates to Sims's FOIA request, Sims maintains that Mondul did not provide all requested information and advised him that at least one camera was not functional on the night in question, and thus no footage was preserved from that camera. (*Id.* ¶¶ IV.21–22.)

Sims brought suit in this court against Mondul and the Danville Sheriff's Office on May 20, 2025. Under its authority to screen complaints filed by parties proceeding *in forma pauperis*, the court dismissed the claims against the Danville Sheriff's Office on May 27 because "sheriff's departments . . . do not have the capacity to be sued." (*See* Order at 1, May 27, 2025 [ECF No. 6] (quoting *Thompson v. City of Danville*, No. 4:10cv00012, 2011 WL 2174536, at *4

(W.D. Va. June 3, 2011)).) Mondul filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 15) and, in response, Sims filed an amended complaint. Mondul again filed a motion to dismiss (ECF No. 26), which has been fully briefed by the parties. Accordingly, the motion is ripe for disposition.[3]

## II.  STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). When evaluating the sufficiency of a complaint, the court is obligated to consider the factual allegations asserted in the complaint as well as any exhibits attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

In this case, Sims is proceeding *pro se*. "A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent

---

[3] The court dispenses with oral argument because it would not aid the court is deciding the discrete and straight-forward issues raised in Mondul's motion.

- 4 -

standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

### III.    DISCUSSION

Several salient principles of law need to be established at the outset. Sims brings this case under 42 U.S.C. § 1983. Section 1983 creates a cause of action any party who is deprived "of rights, privileges, or immunities secured by the Constitution and laws" of the United States by an individual acting under color of state law. Government officials may be liable under § 1983 "only for their personal wrongdoing or supervisory actions that violated constitutional norms." *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022); *see also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). In other words, liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Violations of state law, even by a government agent, are not actionable under § 1983. *See Nansemond Indian Nation v. Virginia*, 795 F. Supp. 3d 733, 771 (E.D. Va. 2025) (noting the "well-established principle that § 1983 cannot be used to remedy violations of state law"); *Elder v. City of Danville*, No. 4:13-cv-00047, 2013 WL 6524651, at *4 (W.D. Va. Dec. 12, 2013) ("Assuming the City improperly denied a FOIA request, such an allegation is a question for a state court to determine in a FOIA action."). Moreover, violations of policies, even properly adopted ones, will not give rise to liability under § 1983 unless the noncompliance *also* violated a federal statutory or constitutional right. *See Jackson v. Sampson*, 536 F. App'x 356, 357 (4th

Cir. 2013) ("[P]rison officials' failure to follow internal prison policies [is] not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation."). With that background in mind, the court analyzes Sims's three asserted causes of action.

    A. "Deliberate Indifference/Reckless Disregard"

For his first cause of action, Sims alleges that, "[a]s the supervising policymaker, [D]efendant Sheriff Mondul acted with deliberate indifference to [P]laintiff's rights and failed to prevent or correct systemic misconduct specifically: the use of excessive force, inhumane and malicious treatment of detainees, deliberate indifference to medical requests/needs, and tacit deletion of video evidence." (Am. Compl. ¶ VI.1.) He further alleges that "Defendant Mondul violated Plaintiff's Fourteenth Amendment rights by facilitating a cover-up of excessive force and inhumane conditions through the destruction or concealment of material evidence." (*Id.* ¶ VI.2.)

Sims peppers his complaint with buzz words and legal phrases, but they do little to guide the court to his stated cause of action. *See* Fed. R. Civ. P. 8(a)(2). As best the court can discern, Sims takes issue with Mondul's alleged lack of oversight over his department. In that vein, Sims's cause of action can best be described as one for supervisory liability under § 1983. To state a claim for supervisory liability under § 1983, a plaintiff must allege facts that, if true, would show

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiffs face a high bar under *Shaw*.

"The first element, which involves actual or constructive knowledge, can be satisfied by showing: '(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury.'" *DJ by and through Hughes v. Sch. Bd. of Henrico Cnty.*, 488 F. Supp. 3d 307, 330 (E.D. Va. 2020) (quoting *Shaw*, 13 F.3d at 799). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Shaw*, 13 F.3d at 799. Under the second factor, a plaintiff must establish the supervisor's "continued inaction in the face of documented widespread abuses"; isolated incidents of supervisees' wrongdoing will not suffice. *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Third, a plaintiff must establish proximate cause between the defendant-supervisor's actions and the plaintiff's eventual harm. *See id.* at 376.

Sims's complaint fails across the board. Even assuming that Sims has alleged an underlying constitutional violation,[4] he has not offered any facts that, if true, would show

---

[4] To be clear, he has not. He alleges, in conclusory fashion, that he was "subjected to physical assault, chemical spray, prolonged restraint, and denial of medical care . . . ." (Am. Compl. ¶ IV.1.) He also claims that he was "threatened with a taser, restrained, and refused medical attention, and [was subject to] prolonged confinement in a restraint chair . . . ." (*Id.* ¶ IV.12.) Surely it is well-known that, *in some instances*, the use of chemical spray or physical contact is proper and necessary, and surely it is well-known that, *in some instances*, those tactics violate a detainee's constitutional rights. The same is true of restraint chairs; sometimes, they are proper and necessary, and other times, their use oversteps well-established constitutional guard rails. But Sims's conclusory allegations do nothing to show that the alleged use of these normal jail practices, *as applied to him*, were improper. Without more, not only can he not show that Mondul was deliberately indifferent to their use, but he can't even show that a constitutional boundary was crossed. And insofar as Sims relies on the video evidence, it does little to establish his claims; all that it confirms is that Sims was pepper sprayed, he was confined to a restraint chair for some period of time, and that an officer drew, but did not deploy, his taser to gain Sims's compliance. (*See* Am. Compl. Ex. 5.)

Mondul's knowledge of his treatment specifically *or* widespread abuses generally. In fact, Sims does not even plausibly allege that the treatment he claims he experienced at the hands of unnamed officers ever occurred before. So, at most, he has alleged that he was mistreated and that Mondul was, possibly, aware of it. Those scant allegations are simply not sufficient to state a claim for supervisory liability under § 1983.[5]

Claims related to the surveillance footage that Sims requested nearly two years after his alleged mistreatment fare even worse. If Sims is asserting a stand-alone cause of action for alleged editing or deleting of footage, it fails because there is "no legal basis under federal or state law for a separate spoliation claim against officials who failed to preserve evidence." *Muhammad v. Mathena*, No. 7:14CV00529, 2017 WL 395225, at *4 (W.D. Va. Jan. 27, 2017) (citing *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) ("[W]hile the spoliation of evidence may give rise to court imposed sanctions . . . the acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses."), *and Bass v. E.I. DuPont de Memours & Co.*, 28 F. App'x 201, 206 (4th Cir. 2002) ("Virginia does not recognize a tort based on spoliation of evidence.")).

Insofar as Sims claims that the editing or deletion of video evidence violated a policy of the Sheriff's Department, the City of Danville, or the Commonwealth of Virginia, he has no claim. "Generally, violations of prison policies and/or procedures do not rise to the level of a constitutional violation." *Stewart v. Williams*, No. 8:24-cv-5908-RMG-WSB, 2025 WL

---

[5] To be sure, Sims does allege that Mondul was "aware of subordinates' civil rights violations against detainees and the deletion of video footage to impede legal action." (Am. Compl. ¶ IV.16.) But this conclusory allegation lacks any factual support and is therefore insufficient to carry Sims's initial burden to state a plausible claim to relief. Moreover, for the reasons stated *infra*, the deletion of video footage, even if it was in furtherance of a prison policy, is not actionable under § 1983.

608146, at *5 (D.S.C. Feb. 3, 2025); *see also Riccio v. County of Fairfax, Va.*, 907 F.2d 1469, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."). Absent some underlying constitutional right to evidence to be used in a subsequent civil action, Sims's claim fails at the threshold. *Accord Jean v. Collins*, 221 F.3d 656, 659–60 (4th Cir. 2000) (Wilkinson, C.J., concurring) ("[A]lleged failures to disclose do not implicate constitutional rights where no constitutional deprivation results therefrom. In this context, the constitutional deprivation must be defined as a deprivation of liberty without due process of law. In the absence of a cognizable injury, such as a wrongful criminal conviction, police suppression of evidence might still give rise to claims under state law. But unless the § 1983 plaintiff can point to a constitutional injury caused by the suppression, no § 1983 remedy will lie."); *Matemu v. Brienzi*, No. 5:19-CV-00380-M, 2021 WL 9000113, at *6 (E.D.N.C. April 6, 2021). Because the supposed editing or deletion of footage did not, under Sims's allegations, result in a constitutional injury, his claim fails.

Sims makes passing reference to "denial of medical care." (*See, e.g.*, Am. Compl. ¶ IV.1.) Given his inclusion of the phrase "deliberate indifference," the court assumes he intends to raise a claim to deliberate indifference to a serious medical need by a pretrial detainee. But, again, his allegations are insufficient to state a claim. To state such a claim, "a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction

posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). But Sims's allegations do not establish that, at any point during his incarceration at the jail, he suffered any injuries, let alone a serious medical need of which *Sheriff Mondul* was aware. To be sure, Sims attaches ER notes and photographs to his complaint (*see* ECF Nos. 19-1 through 19-4.) But those records concern an injury that occurred in May of 2023 and surgery that occurred on June 6, 2023, *before* he was arrested and taken into custody at the Danville City Jail. They establish, at most, that Sims was post-operative at the time of his arrest. But that fact, standing alone, does not establish that his post-operative condition was a *serious* medical need.

In the videos attached to his complaint, Sims says that he missed a dose of his antibiotics and requested pain medicine, but none was provided. It is well-settled that denial of needed medicine can, under certain circumstances, support a claim for deliberate indifference. *See, e.g.*, *Scinto v. Stansberry*, 841 F.3d 219, 228–29 (4th Cir. 2016) (finding that denying insulin to diabetic prisoner was deliberate indifference, albeit under Eighth Amendment standard); *Kovari v. Brevard Extraditions, LLC*, 461 F. Supp. 3d 353, 387 (W.D. Va. 2020). But even if the court were to consider the narration of the videos as substantive allegations, *see* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10(c)("A copy of a *written* instrument that is an exhibit to a pleading is a part of the pleading for all purposes." (emphasis added)), they still do not overcome the hurdle of tying the denial of his medication to Sheriff Mondul or to any policy he implemented or oversaw.

Absent factual allegations that would establish that Sims was suffering from a serious medical need and was denied care while in custody, he has failed to state a claim for deliberate indifference to a serious medical need.

B. "Reckless or callous indifference"

The court is not aware of a standalone cause of action for "reckless or callous indifference." In his complaint, however, Sims cites "§ 1519 obstruction of justice" as the basis of this claim. Clearly, Sims is referencing 18 U.S.C. § 1519, which states:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

Notably, this *criminal* statute does not create a *civil* right of recovery, and violation of a federal criminal statute does not, *ipso facto*, open one up to civil liability. *See Tribble v. Reedy*, 888 F.2d 1387, 1989 WL 126783, at *1 (4th Cir. 1989) (per curiam) ("Unless there is a clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute."). Moreover, "[i]n order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)), *abrogation recognized in Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025). Because Plaintiff does not have a private right of action for the alleged violation of the cited federal criminal statute, Count II fails as a matter of law.

C. "Failure to Supervise/Train"

Although it is unclear whether Sheriff Mondul has challenged Count III of Sims's complaint, Sims has failed to state a claim. And because the court is empowered to review *pro se* pleadings under the same standard of review as a motion to dismiss, *see De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003), the court will dismiss Count III as well.

To state a claim for failure to supervise or train, the plaintiff must allege three elements: "(1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 701–02 (E.D. Va. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–92 (1989)); *see also Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000). Sims's allegations fail at the first prong.

As noted above, Sims has failed to allege facts that, if true, would establish that he was subjected to a violation of his constitutional rights. His conclusory allegations are insufficient to carry the day, and absent *any* factual support for his claims, he simply cannot raise his right to relief above the speculative level. That failure necessarily dooms his failure-to-train claim as well, as the lack of a violation of his statutory or constitutional rights is a necessary element of that claim.[6] Accordingly, whether attacked by Sheriff Mondul under Rule 12(b)(6) or reviewed independently by the court under 28 U.S.C. § 1915(e)(2)(B)(ii), Sims has failed to state a claim for failure to supervise or train under 42 U.S.C. § 1983, and Count III will be dismissed.

---

[6] Sims has also failed to allege facts that would establish the second element of the claim.

## IV. CONCLUSION

Sims's threadbare allegations are insufficient to state a claim *against Sheriff Mondul*.[7] Even if Sims had adequately alleged that he was treated unconstitutionally at the hands of the Danville Sheriff's deputies (and, in this case, he has not), his allegations would still be insufficient to impose liability on Sheriff Mondul.[8] Accordingly, his complaint will be dismissed in its entirety.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 6th day of February, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[7] While Sims's allegations in this pleading would be insufficient to state a claim against the officers involved, the court makes no judgment on whether Sims can state a claim against them directly. The court does note, however, that Sims has sued those officers, *see Sims v. Berger*, No. 7:25-cv-00347 (W.D. Va. May 20, 2025), and the officers did not move to dismiss that complaint, indicating their belief that, at least as a matter of pleading, Sims has stated a claim against them.

[8] To be clear, the court has reviewed the video footage Sims included with his complaint. (*See* Am. Compl. Ex. 5.) Ironically, given his primary allegations against Sheriff Mondul, Sims doctored the footage himself, adding on-screen images and annotations (such as "The Aggressive Deputy"), slowing down and speeding up the footage, and narrating the footage with additional allegations are that not found in his pleadings. But even if the court were to accept his narrations as substantive allegations, it still would not overcome the primary failing of his Amended Complaint—*nothing connects the actions he complains of to Sheriff Mondul*.